# Illinois Central Railroad Company v. Doherty's Admr.

## (Decided April 23, 1913).

## Appeal from McCracken Circuit Court.

1.   Carriers—Interstate Commerce—Action by Personal Representative for Death Caused by Negligence—Right of Recovery—How Determined.—In an action by the personal representative against a common carrier by railroad engaged in interstate commence

for the death, caused by its negligence, of an employe, while employed by it in such commerce, the right of recovery must be determined by the provisions of the act of Congress entitled "An Act Relating to the Liability of Common Carriers by Railroad to their Employees in Certain Cases." Approved April 22, 1908.

2. Carriers—Interstate Commerce—Legislation of State in Conflict With Act of Congress.—The grant of power to Congress in the Federal Constitution to regulate commerce with foreign nations and among the several states is paramount over all legislative powers which, in consequence of not having been granted Congress, are reserved to a State. Therefore, any legislation of a State, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority. For this reason, with respect to the liability of interstate carriers by railroad to their employes injured in such commerce, a recovery by the injured employe or for his death by his personal representative, can be had only under the Employer's Liability Act of April 22, 1908, which supersedes all State laws on the subject.

3. Carrier—Interstate Commerce — Negligence — Beneficiary — Personal Injury—When There Can Be No Recovery.—As section 1 of the Act provides that the recovery it allows to the personal representative, on account of the death of an employe while employed in interstate commerce, resulting from the negligence of the interstate carrier by railroad, shall be "for the benefit of the surviving widow or husband and children of such employe, and, if none, then of such employe's parents, and, if none, then of the next of kin dependent upon such employe," it expressly limits the right of recovery by the personal representative to the beneficiaries named, in the order named. This being so, it necessarily follows that in an action based on the provisions of the act, if there is no beneficiary for whom a recovery can be had, there can be no recovery.

4. Carriers—Action by Personal Representative—Interstate Commerce—Recovery—Pleading.—Proof must be made of the existence of the surviving beneficiary or beneficiaries entitled under the Act to take the recovery; and, if necessary, to be proved as an element essential to a recovery it is an issuable fact that must be alleged. So, in such an action, if the petition does not allege that the deceased employee left surviving him a beneficiary or beneficiaries in whose behalf a recovery can be had, it should, on demurrer, be held to fail to state a cause of action. On the other hand, although the existence of such beneficiary or beneficiaries be properly alleged in the petition, if on the trial, the existence of such beneficiary or beneficiaries be not established by the plaintiff's evidence, the trial court should peremptorily instruct the jury to find for the defendant and its failure to do so is reversible error.

5. Carriers—Action by Personal Representative—Existence of Beneficiaries—Pleading.—The refusal of the trial court, after the evidence is heard, to allow the filing of an amended petition alleging the existence of beneficiaries entitled to take the recovery under the Act of Congress, is not an abuse of discretion, if the evidence fail to prove the existence of such beneficiaries.

6. Employers' Liability Act—What Constitutes Beneficiary Under.—In order to make one a dependent beneficiary in the meaning of the employer's liability act of April 22nd., 1908, he or she must have sustained some pecuniary loss on account of the death of the decedent, and the damages recoverable are such as flow from the deprivation of the pecuniary benefits which the beneficiary might have reasonably received, if the decedent had not died from his injuries.

7. Employer's Liability Act—When Recovery Cannot Be Had Under, Cannot Be Maintained Under Section 6 Ky. Stats.—Where in an action, which can alone be maintained under the provisions of the Employer's Liability Act of April 22, 1908, the evidence fails to establish the right of the plaintiff to recover, he will not be permitted to do so under Chapter 1, Section 6, Kentucky Statutes.

8. Employer's Liability Act—Jurisdiction Conferred by—Act of Congress—How Enforced.—The Act of Congress, though paramount and exclusive, may be enforced in the State, as well as the Federal Courts; concurrent jurisdiction to that end being conferred by the Federal Judiciary Act of August 13, 1888, and by the amendment of April 5, 1910, to the original Employer's Liability Act.

TRABUE, DOOLAN & COX, WHEELER & HUGHES, BLEWITT LEE and C. L. SIVLEY for appellant.

F. N. BURNS, HENDRICK & CRICE for appellee.

Opinion of the Court by Judge Settle—Reversing.

This action was instituted in the court below against the appellant, Illinois Central Railroad Company, by the appellee, John Doherty, as administrator of the estate of his brother, Joe Doherty, deceased, to recover of it damages for the death of the latter, which occurred at Central City, this State, while he was in its employ as a car repairer, and, as alleged in the petition, resulted from the negligence of appellant's yard foreman in failing to provide him a reasonably safe place to work; it being also alleged that the decedent, by order of the yard foreman and because of his promise to guard and protect him from injury, went under one of appellant's cars standing on a yard side track for the purpose of repair-

ing a defective brake thereof, and that while the decedent was performing the work required of him, the foreman, instead of protecting him from injury as he promised to do, negligently permitted another car, operated by a locomotive in charge of one of appellant's engineers, to be moved against the one the decedent was repairing which caused it to run over his body and kill him.

It was further alleged in the petition that the appellant was at the time of the decedent's death, and is now, a common carrier engaged in interstate commerce; that the decedent, when killed, was in the appellant's employ, and "assisting it in carrying on interstate commerce;" and that the car he was repairing when killed was being put in order for use by appellant in transporting freight from one State to another, and "had been used and was being used and was to be used by defendant in carrying on interstate commerce."

The answer of appellant denied that the decedent's death was caused by the negligence of its yard foreman, complained of, or that of any of its servants, and pleaded contributory negligence on the part of the decedent, which plea was controverted by the appellee's reply. The trial resulted in a verdict awarding appellee $16,000 damages, and from the judgment entered on that verdict this appeal is prosecuted.

Only such of the numerous errors assigned for the new trial moved for by appellant in the circuit court as we regard material will be considered on the appeal.

Appellant's first complaint is that the trial court erred in overruling its demurrer to the petition, it being claimed that the petition failed to state a cause of action. That is, it is argued by its counsel, that although the petition rests the right of recovery upon the provisions of the act of Congress, approved April 22, 1908, entitled "An Act Relating to the Liability of Common Carriers by Railroad to their employes in certain cases," it does not state a cause of action as it is not therein alleged that the decedent left surviving him any one of the beneficiaries named by that act in whose behalf a recovery can alone be had. The act in full is as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Terri-

tories, or between the District of Columbia and any of the States or Territories or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employe, to his or her personal representative for the benefit of the surviving widow or husband and children of such employe; and, if none, then of such employe's parents; and, if none, then of the next of kin dependent upon such employe, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employes of such common carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Section 2. That every common carrier by railroad in the Territories, the District of Columbia, the Panama Canal Zone, or other possessions of the United States, shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions, or, in case of the death of such employe, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employe; and, if none, then of such employe's parents; and, if none, then of the next of kin dependent upon such employe, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employes of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Section 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employe, or where such injuries have resulted in his death, the fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe: *Provided,* That no such employe who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any stat-

ute enacted for the safety of employes contributed to the injury or death of such employe.

"Section 4. That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employes, such employe shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury or death of such employe.

"Section 5. That any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability *created* by this act shall to that extent be void: *Provided*, That in any such action brought against any such common carrier under or by virtue of any of the provisions of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employe or the person entitled thereto on account of the injury or death for which said action was brought.

"Section 6. That no action shall be maintained under this act unless commenced within two years from the day the cause of action accrued.

"Section 7. That the term 'common carrier' as used in this act shall include the receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier.

"Section 8. That nothing in this act shall be held to limit the duty or liability of common carriers or to impair the rights of their employes under any other act or acts of Congress, or to affect the prosecution of any pending proceeding or right of action under the Act of Congress entitled 'An Act relating to liability of common carriers in the District of Columbia and territories, and to common carriers engaged in commerce between the States and between the States and foreign nations to their employes,' approved June eleventh, nineteen hundred and six.

"Approved April 22, 1908."

It will be observed that the act places certain restrictions upon the right of the common carrier, engaged in interstate commerce to plead or prove assumption of risk

on the part of the servant injured or killed, while in its service in interstate commerce, deprives it of the right to plead or prove that his injury or death was caused by the negligence of a fellow servant, or that he was guilty of contributory negligence, except that such contributory negligence may be pleaded and shown for the purpose of diminishing the damages in proportion to the amount of negligence attributable to such employe.

It will also be observed that the right of action given by the act to the personal representative of the decedent against the railroad carrier in whose service he was killed, in interstate commerce, by the negligence of its officers, agents or employes, is for the benefit, first, of the surviving widow or husband and children of the decedent, and, if none, second, his parents, and, if none, third, the next of kin *dependent upon* the decedent.

It is clear that the act does not like the Kentucky statute applicable to similar cases, allow a recovery merely to compensate the estate of the decedent for his death and the consequent destruction of his power to earn money, but provides that only those naturally or actually dependent upon the decedent shall take the benefit of the recovery. It, therefore, expressly limits the right of recovery to cases in which only the person or persons sustaining pecuniary loss by the decedent's death are entitled to be compensated, viz: the beneficiaries named, in the order named. This being so, it necessarily follows that in an action under the act of Congress if there is no one for whom a recovery can be had, there can be no recovery. Proof must, therefore, be made of the existence of such surviving beneficiary or beneficiaries; and, if necessary to be proved as an element essential to a recovery, it is an issuable fact that must be alleged. So, if the petition in such an action fails to allege that the decedent is survived by a person or persons coming within the indicated limitation, it is bad on demurrer. Western U. T. Co. v. Mitchell, 56 Fed. Rep., 699; Mayhew v. Burns, 103 Ind., 328; Ry. Co. v. Wright, 134 Ind., 509; Fithian v. St. L. & S. F. Ry. Co., 188 Fed. Rep., 842; Stewart v. B. & O. R. R. Co., 168 U. S., 445; C. & O. Ry. Co. v. Dixon, 179 U. S., 131; Railroad Co. v. O'Connor, 119 Ill., 111; Davis v. Railway Co., 53 Ark., 117.

In this jurisdiction, in numerous cases involving consideration of section 3, chapter 57, General Statutes, known as the "Wilful Neglect Statute," since repealed,

it was held by us that an action, thereunder, could not be maintained unless the decedent left a widow, child or children, as the statute so provided. Jordan v. C. N. O. & T. P. Ry. C., 89 Ky., 40; Henderson v. K. C. R. R. Co., 86 Ky., 389; N. N. & M. V. R. R. Co. v. Dentzel, 91 Ky., 46; Hackett v. L. St. L. R. R. Co., 101 Ky., 40; C. &c. R. R. Co. v. Privett, 92 Ky., 224; Givens v. K. C. R. R. Co., 89 Ky., 323; Clark v. L. & N. R. R. Co., 101 Ky., 40.

Thus far our consideration of the objection to the petition raised by the demurrer has rested upon the assumption that the action is controlled by the provisions of the act of Congress. It must now be determined whether this is so. It is insisted by counsel for appellee that although the petition be regarded insufficient to authorize a recovery under the Federal Statute, *supra,* it nevertheless states a cause of action under section 6, chapter 1, Kentucky Statutes, which entitled him, upon the evidence introduced in support of its averments, to the verdict and judgment in his favor returned and entered in the court below.

This view of the case seems to have been adopted by the trial court and the instructions under which it was submitted to the jury, except an incorrect one as to the measure of damages, allowed a recovery under the Kentucky Statute, but we are unable to accept this as the law, for, as we shall presently see, the authorities all hold to the contrary.

That the appellant is and was at the time the decedent met his death a common carrier by railroad, engaged in interstate commerce, and that decedent at the time of his death was "assisting it in carrying on interstate commerce," by then repairing a freight car which "had been used, was being used, and was to be used by defendant in carrying on interstate commerce," cannot be doubted; for, as previously stated, it is so alleged in the petition. In addition, these facts appear from the bill of evidence, and also by the following agreement between the parties to the action entered of record.

"It is hereby agreed between counsel for plaintiff and defendant that the decedent Joe Doherty, at the time of his death, was employed by the defendant, and was engaged in interstate commerce in the performance of his duties at the time of his injury; that the car causing his death was an interstate commerce car and was being so used; and that the engine which kicked or run the car

against him was at the time making up an interstate commerce train to be immediately carried into other States."
It being then an admitted fact that the decedent, when killed, was in appellant's employ while it was engaged in interstate commerce and when he was serving it in such commerce, and it appearing from the evidence that his death was caused by the negligence of another servant of appellant who was also employed by it in such commerce, it inevitably follows that the action by the administrator to recover damages for his death, if permissible at all, could be maintained only under and by virtue of the provisions of the act of Congress of April 22nd, 1908, which is superior to and supersedes chapter 1, section 6, Kentucky Statutes.

In Mondou v. N. Y. N. H. and H. R. R. Co., 223 U. S., 1, 38 L. R. A., 44, the constitutionality of the act of Congress in question was sustained, and in addition, practically every material question involved in the instant case considered and decided. With respect to the question we are now considering it is in the opinion said:

"The third question, whether those regulations supersede the laws of the States in so far as the latter cover the same field, finds its answer in the following extracts from the opinion of Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat, 316, 4 L. Ed., 579: 'If any one proposition could command the universal assent of mankind, we might expect it would be this—that the government of the Union, though limited in its powers, is supreme within its sphere of action. This would seem to result necessarily from its nature. It is the government of all; its powers are delegated by all; it represents all, and acts for all. Though any one State may be willing to control its operations, no State is willing to allow others to control them. The nation on those subjects on which it can act, must necessarily bind its component parts. But this question is not left to mere reason; the people have, in express terms, decided it, by saying, "this constitution and the laws of the United States, which shall be made in pursuance thereof, shall be the supreme law of the land; and by requiring that the members of the State legislatures, and the officers of the executive and judicial departments of the States shall take the oath of fidelity to it. The government of the United States, then, though limited by its powers, is supreme; and its laws, when made in pursuance of the constitution, form

the supreme law of the land," anything in the constitution or laws of any State to the contrary notwithstanding. * * * 'This great principle is that the constitution and the laws made in pursuance thereof, are supreme; that they control the constitution and laws of the respective States and cannot be controlled by them.' And particularly apposite is the repetition of that principle in Smith v. Alabama, 124 U. S., 465: 'The grant of power to Congress in the Constitution to regulate commerce with foreign nations and among the several States, it is conceded is paramount over all legislative powers which, in consequence of not having been granted to Congress, are reserved to the States. It follows that any legislation of a State, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority.' True, prior to the present act, the laws of the several States were regarded as determinative of the liability of employers engaged in interstate commerce for injuries received by their employes while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because the subject is one which falls within the police power of the States in the absence of action by Congress. * * * The inaction of Congress, however, in no wise affected its power over the subject. * * * And now that Congress has acted, the laws of the States, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is."

The opinion likewise holds that the distribution of the damages recoverable under the act of April 22, 1908, for the death of an employe while engaged in interstate commerce, is governed by the provisions of that act which necessarily supersede any state legislation that would otherwise apply, and furthermore, that the enforcement of rights, under the act, are not even impliedly restricted to the Federal Courts, but may be enforced in the State courts, as well; concurrent jurisdiction to that end being conferred by the Judiciary Act of August 13, 1888, section 1, and recognized by the amendment of April 5, 1910, to the original Employer's Liability Act.

In response to the suggestion that, if the act of Congress is not in harmony with the policy of a State, the

courts of the State would be free to decline jurisdiction, the opinion declares such a proposition "inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all people and all the States, and thereby established a policy for all.   * * *   As was said by this court in Claflin v. Houseman, 93 U. S., 130, 136, 137. 'The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are.   * *   If an act of Congress gives a penalty (meaning civil and remedial), to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise, by some act of Congress by a proper action in a State court.  The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws.  The two together form one system of jurisprudence, which constitute the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.  * * *   It is true, the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by the Chief Justice Taney in the case of Abbleman v. Booth, 21 How., 506, and hence the State courts have no power to revise the action of the Federal courts, nor the Federal the State, except where the Federal Constitution or laws are involved.  But this is no reason why the State courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent and not denied.

"We are not disposed to believe that the exercise of jurisdiction by the State courts will be attended by any appreciable inconvenience or confusion; but, be this as it may, it affords no reason for declining a jurisdiction conferred by law.  The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication. Besides, it is neither new nor unusual in judicial proceed-

ings to apply different rules of law to different situations and subjects, even although possessing some elements of similarity as where the liability of a public carrier for personal injuries turns upon whether the injured person was a passenger, an employe, or a stranger. But it never has been supposed that courts are at liberty to decline cognizance of cases of a particular class merely because the rules of law to be applied in their adjudication are unlike those applied in other cases. We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the State when their jurisdiction, as prescribed by local laws, is adequate to the occasion.''

Since Mondou v. N. Y., N. H. & H. R. Co., *supra*, was decided, two others, M. K. & T. Ry. Co. v. Sallie C. Wulf, 226, U. S., 570 and M. C. R. R. Co. v. Vreeland, 227 U. S., 59, have been decided by the Supreme Court of the United States, in each of which was reaffirmed the doctrine announced in the Mondou case, that with respect to the liability of interstate carriers by railroad to their employes injured in such commerce, a recovery by the injured employe, or for his death by his personal representative, could be had only under the employer's liability act of April 22, 1908, and that such act supersedes all State laws upon the subject.

In M. K. & T. Ry. Co. v. Wulf, *supra*, it was also held, that a reference to a State statute in the petition in an action which could legally rest only upon the Employer's Liability Act of April 22, 1908, which supersedes State laws upon the subject, did not invalidate the pleading any more than would mention of a repealed statute. As upon the admitted facts of the instant case appellant's liability, if any, for the death of the decedent must be made to rest upon the Employer's Liability Act of April 22, 1908, and the petition failed to allege that the decedent left surviving him any one of the beneficiaries named by that act in whose behalf a recovery against appellant could be had, it did not state a cause of action, hence the demurrer filed to it by appellant should have been sustained.

We do not overlook the fact that after the evidence was all in, appellee offered to file an amended petition in which it was alleged, ''that the decedent Joe Doherty, did not leave any wife or children, father or mother surviving him; that the said Joe Doherty, left surviving him, the plaintiff, John Doherty, a brother, and Margaret

Doherty, a sister, and Mary Doherty O'Donnell, another sister, George, Pat, Mac, James and Thomas Doherty, brothers of deceased, his next of kin, who were dependent upon him; and that since the death of said Joe Doherty, one of the said sisters, to-wit, Mary Doherty O'Donnell, died his next of kin who was dependent upon him at the time of his death; that the said deceased sister left surviving her children."

If there had been any evidence conducing to prove that the decedent's brothers or sisters, or any of them, mentioned in the amended petition, were dependent upon him, the filing of the amended petition would have been permissible in order to make the pleadings conform to the proof, but there was no such evidence, therefore the rejection of the amended petition was not an abuse of discretion.

The only evidence introduced on that point was that of appellee, who testified that the decedent had, besides the brothers before mentioned, two sisters, one of whom was married and living with her husband in Ireland; the other a Sister of Charity residing in a convent in Virginia, and devoting her time and services to the Catholic Church and its benevolences.   Appellee admitted the Sister of Charity was supported by her Church, and that she did not ask for nor receive assistance from the decedent.   He said the decedent had sometimes sent money to the married sister in Ireland, which he had on more than one occasion borrowed of him for that purpose, but did not say that the money borrowed of him was in fact sent the sister or that she was dependent upon the decedent.   Whether the money, the latter sent her, was in payment, of a debt or for her support he did not know, or, at any rate, did not say; nor did he undertake to state that the husband of the sister in Ireland was unable to support his wife and children.

The death of the sister in Ireland occurred since that of the decedent and the names of her surviving children do not even appear in the record.   There was no attempt on the part of appellee to show that he or the other brothers of the decedent were in any way dependent upon him.

In order to make one a dependent beneficiary under the Employer's Liability Act, he or she must have sustained some pecuniary loss on account of the death of the decedent, and the damages recoverable, "Are such as

flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received, if the decedent had not did from his injuries." As said in M. C. R. R. Co. v. Vreeland, *supra,*

"The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived. Compensation for such loss manifestly does not include damages by way of recompense for grief or wounded feelings. * * * Pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, not only to express the character of that loss to the beneficial plaintiffs which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valua- tion, and that inestimable loss of the society and com- panionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary value." Patterson Ry. Accident Law Sec. 401: Tiffany Death by Wrongful Act, Sec. 153; I. C. R. R. Co., v. Barron, 5 Wall, 90; Tilley v. Hudson River R. Co., 24 N. Y., 471; Davis v. Guarmiri, 45 Ohio St., 470; Hurst v. Detroit City R. Co., 84 Mich., 539; Penn. Ry., Co. v. Goodman, 62 Pa., 329; L. & N. R. R. Co., v. Rush, 127 Ind., 127.

The evidence being wholly insufficient to show that the decedent was survived by any person naturally or actually dependent upon him in the meaning of the Em- ployer's Liability Act of April 22, 1908, the refusal by the trial court of the peremptory instruction directing a verdict for appellant, was error. No right of recovery in behalf of appellee was shown, and having failed to mani- fest such right under the Employer's Liability Act, he could not rest his right to recover on the Statute of the State. Whether he could have done so, if the evidence had shown that the decedent was not at the time of his death, employed by appellant in interstate commerce, is not before us for decision. As also said in M. C. R. Co. v. Vreeland, *supra*:

"We may not piece out this act of Congress by resort- ing to the local statutes of the state of procedure or that of the injury. The act is one which relates to the liability of railroad companies engaged in interstate commerce

to their employees, while engaged in such commerce.  The power of Congress to deal with the subject comes from its power to regulate commerce between the States.''

The act of Congress though paramount and exclusive, may be enforced in the State, as well as the Federal Courts, therefore, no obstacle stands in the way of a ready application of its provisions in either.  The conclusion we have reached makes it unnecessary for us to consider appellant's objections to the instructions given on the trial.  None of them should have been given, but the jury instead, should have been peremptorily instructed to find for the appellant.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.  Whole court sitting, Judge Nunn dissenting.


DISSENTING OPINION BY JUDGE NUNN—


I cannot agree to the opinion in deciding that the Act of Congress covers the whole field of interstate employes.  Such an employe who has no one dependent upon him within the meaning of the Statute, is not touched by the Act; he is left to the different jurisdictions of the law governing his case.

The Mondou and the other two cases since decided, which are referred to in the opinion, were cases where the employes engaged in interstate commerce, left persons dependent upon them within the meaning of the Act. Consequently, all that was said in those cases was applicable to such cases—they were discussing the cases before them.  There has never been a case in the Supreme Court of the United States deciding the exact question herein considered, but they have discussed questions of similar character.  It would seem that our statute, Sec. 6, is not in conflict with the Federal Act.  It does not deny or change any right given under the Employer's Liability Act, but covers a field not touched upon by Congress and one which Congress did not intend to disturb.  See C. & C. Bridge Co. v. Kentucky, 154 U. S., 204; Sherlock v. Alling, &c., 93 U. S., 99; Smith v. Alabama, 124 U. S., 465; P. C. C. & St. L. Ry. Co. v. Illinois, 177 U. S., 514; M. K. & T. Ry. Co. v. Haber, 169 U. S., 613; Gulf Colorado & Santa Fe Ry. Co. v. Hafley, 158 U. S., 98; Hennington v. Georgia, 163 U. S., 299; Gladson v. Minnesota, 166 U. S., 427; Sinnot, &c., v. Davenport, &c., 22 How., 227;

Fitch v. Livingston, 4 Sandford, 492, and Munn v. Illinois, 94 U. S., 113.

It will also be noticed that the Act itself says that it is for the benefit of interstate employes in "certain cases," and those employes having no one dependent upon them are excluded.

I also cannot agree with the court's conclusion upon the subject of dependency.

For these reasons, I dissent from the opinion by the court.